UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**HEATHER EVANS**                                                                                                      **PLAINTIFF**

vs.                                                **NO. 3:18-CV-486-CRS**

**AUTO CLUB PROPERTY-CASUALTY INS.**                        **DEFENDANTS**
**CO. a/k/a AUTO CLUB SERVICES, INC.**

<u>**MEMORANDUM OPINION**</u>

This matter is before the court on Plaintiff's motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), DN 49, in which she argues that the Court committed "manifest error" in finding that no genuine dispute of material fact exists for trial. DN 51 at 3. Defendant filed a response. DN 50. Plaintiff filed a reply. DN 51. This matter is now ripe for adjudication. For the following reasons, Plaintiff's motion will be denied.

**I. BACKGROUND**

This matter arises in the context of an insurance claim by homeowner Heather Evans ("Evans" or "Plaintiff") against her insurer, Auto Club Property Casualty Insurance Company ("Auto Club" or "Defendant"), for mold damage she discovered in her home in 2017. She alleges this mold damage is related to a roof leak she reported to Auto Club in 2013. DN 1-1.

In October 2013 Evans noticed water dripping from an access panel in the ceiling of the sunroom located at the rear of her home, which she reported to Defendant. DN 30-2 at 9. It was determined that the water originated from a roof leak caused by wind damage, located above the sunroom. DN 30-2 at 14. The cost to repair the roof and resulting water damage was covered by her insurance policy, which covers any "accidental direct physical loss." DN 30-1 at 3, 16. Defendant eventually agreed to pay for the cost of replacing the entire roof because the matching

1

shingles needed to repair just the damaged area above the sunroom were no longer manufactured. DN 30-2 at 14. Defendant paid a total of $10,975.20 for the claim, and Plaintiff hired a contractor to replace the roof and make internal repairs. DN 30-1 at 3–4.

After replacing the roof, Evans states that she did not notice any further issues relating to water leaking, water intrusion, or mold until 2017. DN 30-2 at 33–34. In February 2017, Evans discovered mold in the basement and the ceiling of the bathroom in the master bedroom. *Id.* at 24–29. She contacted Auto Club on April 3, 2017 to report the damage and claimed it was related to the roof leak that resulted in the 2013 claim. *Id.* at 31–32. Auto Club retained two experts to inspect Plaintiff's home—Terence A. Weigel, P.E. ("Weigel") of Donan Forensic Engineering and Jerry Parker ("Parker") from Environmental Solutions Group, LLC, who documented water-related damage throughout the home. DN 20-3 at 1–29; DN 30-9 at 1–44. Weigel and Parker identified mold in the following locations: main attic, master bathroom ceiling, basement, crawlspace, and a front bay window. DN 20-3 at 11–12; DN 30-9 at 4–5. Neither expert concluded that the mold damage they observed was caused by the 2013 roof leak. *Id.* As a result of these reports, Auto Club declined to pay Evans' claim. DN 30-2 at 36. Evans contested Auto Club's denial and requested re-inspection. Auto Club responded by sending letters to Evans explaining that the mold damage was not a covered loss according to her policy. DN 30-10; DN 30-11.

In fall 2017, Plaintiff hired Shaun Wallace ("Wallace") of Wallco Custom Construction, LLC to conduct a "full assessment" of her home. DN 33-2 at 1. At this point, most of the mold had already been removed. DN 30-12 at 14–15. After consulting with Evans and reviewing photographs, Wallace concluded that the mold damage was caused by a roof leak. *Id.* at 16–17. However, he stated in his deposition that it could not have been caused by the 2013 roof leak because that occurred in the rear of the house and the 2017 mold was located in the front of the

house. *Id.* at 22–23. He noted that because the rear and main attic spaces are not connected, water could not have migrated from the rear attic to the main attic, nor to any other portion of the front of the house where Evans observed mold. *Id.* Furthermore, Wallace stated that he did not know what would have caused the alleged roof leak in the front of the house, acknowledging that roof leaks can result from weather events but also from improper insulation, nail pops and normal wear and tear of the roof. DN 40-5 at 4.

Plaintiff also requested a report from Douglass Peters ("Peters")—a Certified Safety Professional, and Council-certified Indoor Environmental Consultant—to "determine if roof leaks could have caused mold growth." DN 33-3 at 1. Peters likewise concluded that much of the mold could have been caused by a roof leak that migrated down through wall spaces to the affected areas. 30-13 at 10–12. Like Wallace, Peters also agreed that the 2013 roof leak in the rear of the home could not have caused the damage to the front, northwest or southwest corners of the home. *Id.* at 56. Instead, he believed roof leaks in the front of the house prior to 2013 may have caused the mold damage. *Id.* at 10–12. However, he could not determine the cause of the alleged leaks, agreeing that they could have resulted from a variety of causes, including wind, hail, nails popping up, expansion and contraction of the roof due to temperature changes, and normal deterioration of the roofing materials over time. *Id*. at 14.

Plaintiff brought the present action against Defendant in Kentucky state court on June 20, 2018, alleging breach of contract and a variety of bad faith claims. DN 1-1. Defendant removed the case to federal court. DN 1. The parties agreed that a finding on the breach of contract claim might be dispositive on whether Auto Club acted in bad faith and agreed to stay discovery on the bad faith claims until after resolution of the underlying breach of contract claim. DN 9 at 2.

On October 14, 2019, Defendant moved for declaratory judgment and summary judgment, and asked that the court find Defendant has no obligation to pay additional benefits to Plaintiff under its homeowner's policy because:

> (1) there is no evidence that the mold damage she discovered in 2017 was related to a covered loss;
> (2) Any property coverage provided by the policy is otherwise excluded by policy exclusions for fungi and wear and tear; and
> (3) Evans' material misrepresentations made in the presentation of her claim void the policy.

DN 35 at 1.  Defendant also argued that, absent a contractual obligation to pay additional benefits, Plaintiff's bad faith claims should also be dismissed.  DN 30-1 at 24.

On February 18, 2020, this Court denied Defendant's motion, finding that (1) Plaintiff's experts presented "sufficient evidence to raise a question of fact as to whether the mold damages Plaintiff discovered in 2017 were a covered loss under Plaintiff's policy," DN 37 at 6; (2) that under the "efficient proximate cause doctrine" the mold in question could constitute a covered loss despite the presence of a mold exclusion provision in the insurance contract, DN 37 at 7; and (3) that allegedly false statements made by Plaintiff during deposition did not invalidate her insurance contract, DN 37 at 8–9.

On March 11, 2020 Defendant moved this Court to reconsider its denial of declaratory and summary judgment, arguing that the court committed clear error in (1) finding a genuine issue of material fact as to whether at least some of Plaintiff's claimed 2017 damages were caused by the 2013 covered event, (2) finding that under the "efficient proximate cause doctrine" the mold in question could constitute a covered loss, and (3) denying dismissal of Plaintiff's bad faith claims. DN 40.  The Court granted Defendant's motion to reconsider in part.  DN 48.  Upon careful review of the record, the Court found that there was no genuine dispute of material fact for trial as to the breach of contract claim.  DN 47 at 9.  In addition, the Court reaffirmed its finding that the mold

4

in question could constitute a covered loss under the efficient proximate cause doctrine if Plaintiff could establish the mold resulted from a covered loss. *Id.* at 12. Finally, since the Court granted Defendant's motion for summary judgment as to the underlying breach of contract claim, it also dismissed Plaintiff's bad faith claims. *Id.* at 12–13. Accordingly, the Court entered a final judgment on July 29, 2020 dismissing all of Evans' claims. DN 48.

On August 25, 2020, Plaintiff filed the present motion asking the Court to reconsider its decision that no genuine issue of material fact exists for trial. DN 49.

## II.  LEGAL STANDARD

"While the Federal Rules do not explicitly recognize a 'Motion to Reconsider,' the court interprets a motion for reconsideration as a motion to alter or amend a judgment." *Tritent Int'l Corp. v. Kentucky*, 395 F. Supp. 2d 521, 523 (E.D. Ky. 2005). A motion for reconsideration filed after the entry of a final judgment should be treated "as a motion to amend the judgment under Fed. R. Civ. P. 59(e) if it is timely filed under that rule ("no later than 28 days after the entry of the judgment")." *Hughbanks v. Hudson*, No. 1:07-cv-111, 2018 U.S. Dist. LEXIS 173264, at *1-2 (S.D. Ohio Oct. 9, 2018); *see also Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979). The Rule 59(e) motion does not permit the movant to merely reargue the case nor to present arguments not put forward prior to judgment. *Pechatsko v. Comm'r of Soc. Sec.*, 369 F. Supp. 2d 909, 911 (N.D. Ohio 2004). Instead, the party "must either clearly establish a manifest error of law or must present newly discovered evidence" in order to prevail on the motion. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (internal quotation marks omitted) (quoting *Fed. Deposit Ins. Corp. v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)).

## III. DISCUSSION

In addressing Defendant's motion for reconsideration, the Court carefully reexamined the record and found that neither of Plaintiff's experts "present any evidence that mold was in the attic prior to 2013, when the mold growth occurred, what caused the alleged roof leaks, when those leaks started, or whether the cause of the damage would constitute a covered event under Plaintiff's insurance policy." DN 47 at 9. Upon this basis, the Court held that Plaintiff's allegations that the mold damage throughout her home was caused by a covered event were entirely speculative. *Id.* Since the discovery deadline had already passed and a jury could not reasonably return a verdict in Plaintiff's favor based on the evidence put forward, the Court concluded that summary judgment for Defendant was proper. *Id.*

In her motion for reconsideration, Plaintiff restates her previous arguments and does not cite to the record or any other evidence to explain why she believes the Court's decision was made in error. Plaintiff states that the factual issue to be determined is "what was the cause of the mold," which she argues is "without any doubt, a factual question" of causation that should proceed to a jury. DN 49 at 2. Furthermore, she argues that "it is not reasonable to assume, at this stage, that the evidence is not going to bridge the logical steps of causation which support a finding in Plaintiff's favor." DN 49 at 3. Plaintiff's arguments are without merit.

As the Court previously noted, "Under Kentucky law, the party seeking to establish coverage bears the burden of establishing that the incident at issue was within the scope of the policy." *Secura Ins. Co. v. Gray Constr., Inc.*, 717 F. Supp. 2d 710, 714-15 (W.D. Ky. 2010); *see also* 19 G. Couch, Couch on Insurance 2d § 79:315 (Rev. ed.) (1983). Accordingly, Plaintiff bears the burden of demonstrating how she could prove at trial that the mold damage in her home was caused by an "accidental direct physical loss," as is required in order for the policy to provide coverage.

6

Plaintiff correctly characterizes the factual issue as "what was the cause of the mold?" Contrary to Plaintiff's theory put forward in the complaint, both her experts agree that the 2013 covered loss could not have been the cause. Instead, they suggest the cause could have been one or more roof leaks in the front of her home prior to the 2013 roof repair, though they cannot say for sure whether those leaks actually existed nor what would have caused them. These hypothetical leaks could have constituted an accidental physical loss, which would be covered under the policy, or, as both Plaintiff's experts point out, by other events, such as wear and tear or nail pops, which would not fall within the scope of the insurance policy. The question of what caused the mold, therefore, remains unanswered. However, this fact alone is insufficient to survive summary judgment, contrary to Plaintiff's assertions. It is her burden to show that if these alleged leaks actually existed, they constituted an accidental direct physical loss. She has not.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* Evans' vague and conclusory allegations regarding the cause of the mold damage do not create a genuine issue of material fact for trial. Her assertion that somehow the evidence may "bridge the logical steps of causation" at trial is untenable, as no jury could return a verdict in Plaintiff's favor based on the evidence that has been presented. And since discovery has closed, no additional evidence will come to Plaintiff's aid to bridge the gap. Therefore, the Court did not commit manifest error in finding that no genuine issue of fact exists for trial.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's motion for reconsideration, DN 49, will be denied by separate order.

November 6, 2020

Charles R. Simpson III, Senior Judge
United States District Court